# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE ) 
 ) 
 ) ID No. 2007008766
v. ) 
 ) 
 ) 
RAUL MARQUIN-MENDOZA, ) 
 ) 
Movant/Defendant. ) 

Submitted: May 9, 2022

Decided: June 30, 2022

*Upon Movant's Motion for Postconviction Relief (R-1)*

**DENIED**

## MEMORANDUM OPINION AND ORDER

Raul Marquin-Mendoza, SBI #00822318, Sussex Correctional Institution, P.O. Box 500, Georgetown, DE 19809; *Pro Se*.

Nichole Gannett, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

**KARSNITZ, R. J.**

# I. BACKGROUND

On September 14, 2021, I accepted a guilty plea from Raul Marquin-Mendoza ("Movant") to one felony charge: Child Sex Abuse in the above-referenced case. That same day, I sentenced Movant to twenty-five (25) years of incarceration at Level 5 (with credit for 423 days previously served), suspended after twelve (12) years for ten (10) years at Level 3, and I imposed numerous other conditions.

Movant did not take a direct appeal to the Delaware Supreme Court, and has filed no other motions or petitions seeking relief from the judgment in state or federal court.

On March 15, 2022, Movant filed a Motion for the Appointment of Postconviction Counsel ("PCC") (the "PCC Motion") and his first *pro se* Motion for Postconviction Relief (the "Rule 61 Motion") (collectively, the "Motions"). On March 30, 2022, I denied the PCC Motion. I also denied the Rule 61 motion with respect to grounds (2) (failure by Movant's defense counsel ("Trial Counsel") to appropriate the resources necessary to investigate the charges and prepare for the guilty plea and sentence) and (3) (my allegedly illegal imposition of an excessive sentence on Movant). With respect to ground (1) (ineffective assistance of Trial Counsel due to Trial Counsel's coercion of Movant to accept a guilty plea), I

requested Trial Counsel to submit an affidavit addressing Movant's allegations (the "Affidavit"), which Trial Counsel submitted on May 9, 2022.

Having carefully reviewed Petitioner's ineffective assistance of counsel claim under ground (1) of the Rule 61 Motion, the record of prior proceedings in the case, and the Affidavit, I have decided that the record does not need to be further expanded to include a Response from the State and a Reply from Movant, and that an evidentiary hearing is not required. The Rule 61 Motion, as to ground (1), is denied.

## II. PROCEDURAL BARS UNDER RULE 61(i).

I first address the four procedural bars of Superior Court Criminal Rule 61(i).[1] If a procedural bar exists, as a general rule, I will not address the merits of the postconviction claim.[2] Under the Delaware Superior Court Rules of Criminal Procedure, a motion for post-conviction relief can be barred for time limitations, successive motions, failure to raise claims earlier in the proceedings, or former adjudication.[3]

---

[1] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990)).
[2] *Bradley v. State*, 135 A.3d 748 (Del 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009).
[3] Super. Ct. Crim. R. 61(i).

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the conviction becomes final.[4] Movant's conviction became final for purposes of Rule 61 30 days after I imposed sentence.[5] I imposed sentence on September 14, 2021, and Movant filed the Rule 61 Motion on March 15, 2022. Since Movant filed his Rule 61 Motion less than a year after my sentencing, this bar does not apply.

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[6] Since this is Movant's first Rule 61 Motion, this bar does not apply.

Third, grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred unless the movant can show "cause for relief" and "prejudice from [the] violation."[7] However, this Rule 61 Motion is based on a claim of ineffective assistance of counsel. It is well-settled Delaware law that, as collateral claims, ineffective assistance of counsel claims are properly raised for the first time in postconviction proceedings.[8] Thus, this bar does not apply.

---

[4] Super. Ct. Crim. R. 61(i)(1).
[5] Super. Ct. Crim. R. 61(m)(1).
[6] Super. Ct. Crim. R. 61(i)(2).
[7] Super. Ct. Crim. R. 61(i)(3).
[8] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at

3

Fourth, grounds for relief formerly adjudicated in the case are barred.[9] Movant's claim of ineffective assistance of counsel was not formerly adjudicated in this case. Thus, this bar does not apply.

Thus, none of the procedural bars under Rule 61 apply to the claim in this Rule 61 Motion, and I will consider it on the merits.

### III.   MOVANT'S BURDEN OF PROOF

The starting point for assessing Movant's claim is the two-pronged standard established in *Strickland v. Washington,*[10] as adopted in Delaware by *Albury v. State.*[11] Under *Strickland* and *Albury*, Movant must show that (1) Trial Counsel's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense." (the "prejudice prong").[12] Movant must prove both prongs of the *Strickland* test.

In considering the performance prong, the United States Supreme Court was mindful that "[S]trategic choices made after thorough investigation of law and facts

*2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").

[9] Super. Ct. Crim. R. 61(i)(4).

[10]  466 U.S. 668 (1984).

[11]  551 A.2d 53 (Del. 1988).

[12]  *Strickland* at 687.

relevant to plausible options are virtually unchallengeable."[13]  *Strickland* requires an objective analysis, making every effort "to eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[14]

As to the prejudice prong of *Strickland*, Movant must demonstrate that there exists a reasonable probability that, but for Trial Counsel's unprofessional errors, Movant would not have pled guilty or the outcome of the case would otherwise have been different.[15]  Even if counsel's performance *were* professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[16]  A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[17]

*Strickland* also teaches that there is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in any particular order, or to address both prongs of the inquiry if the defendant makes an insufficient showing on one.  A court need not determine whether Trial Counsel's performance was deficient *before* examining the prejudice suffered by the defendant because of

---

[13]   *Id*. at 690.
[14]   *Id.* at 689.
[15]   *Id.* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[16]   *Strickland,* at 691.
[17]   *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).

the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[18]  In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[19]

## IV.   ANALYSIS

**Performance of Trial Counsel**

In the Rule 61 Motion, Movant, through an interpreter-paralegal,[20] states:

> [Movant] was coerced into accepting a plea on the basis of his forthcoming & compliant behavior would provide appropriate agreed sentencing; minimal/minimum sentencing pursuant to Benchbook; he was deceived then threatened with life.

Although this statement is somewhat ambiguous, it appears to state that, because of his naïve and cooperative behavior, Movant was tricked into pleading guilty by a "bait and switch" by Trial Counsel: Trial Counsel first described the mandatory minimum sentence under the Benchbook,[21] but then threatened him with a sentence of life in prison if he did not accept the guilty plea.

---

[18] *Strickland,* at 697.
[19] *Id*. at 696.
[20] Movant only speaks Spanish and his communication with Trial Counsel and the Court was through an interpreter.  See discussion, *post*.
[21] SENTAC Benchbook 2020.

No further evidence to support this allegation is provided in any form whatsoever. Movant's statement is brief, conclusory, non-specific, and provides no factual support for his claims. This in and of itself could constitute a sufficient independent basis for my denial of the Rule 61 Motion.[22] This Court has held that "[a] movant [under Rule 61] must support his or her assertions with 'concrete allegations of actual prejudice, or risk summary dismissal.'"[23] In this case, "[i]t plainly appears from the motion that Defendant has not shown entitlement to relief. Defendant's motion is completely conclusory, and [he] has failed to support his claims with facts. For these reasons Defendant's motion warrants summary dismissal."[24] However, I will address his claim.

As a preliminary matter, Movant's ground (1) relates indirectly to the sentence I imposed on him. In my March 30, 2022 ruling, I denied Movant's direct claim that I imposed an excessive sentence on him because it was untimely filed,[25] and I noted that the sentence I imposed was exactly the sentence that

---

[22] "The Motion shall specify all the grounds for relief which are available to the movant and of which the movant has or, by the exercise of reasonable diligence, should have knowledge, *and shall set forth in summary form the facts supporting each of the grounds thus specified.*" Super. Ct. Crim. R. 6l(b)(2) (emphasis supplied).

[23] *State v. Johnson,* 2009 WL 638511, at *1 (Del. Super. Mar. 12, 2009), *aff'd,* 977 A.2d 898 (Del. 2009) (quoting *State v. Childress*, 2000 WL 1610766, at *1 (Del. Super. Sept. 19, 2000)).

[24] *Id*. at *2.

[25] More than 90 days after sentencing under Super. Ct. Crim. R. 35(b).

Movant and the State agreed to. In any event, under the plain language of Rule 61, a postconviction challenge to a non-capital sentence is not cognizable under Rule 61.[26] The Delaware Supreme Court has repeatedly held that defendants cannot use Rule 61 postconviction proceedings to challenge non-capital sentences.[27]

In response to Movant's barebones claim, Trial Counsel asserts that, based on his review of the case, Movant faced a very long and serious jail sentence, including life in prison, if convicted as charged at trial. Trial Counsel concluded that Movant had a very slim chance of a successful defense, since Movant was identified through DNA analysis as the father of the minor victim's child. Movant admitted to committing some of the crimes charged when he was arrested.

Movant's original plea offer was to a charge of Sexual Abuse of a Child by a Person in a Position of Trust, which carried a sentence ranging from 15 years to life in prison. The State's initial plea offer recommended 50 years at level 5, suspended after 20 years. Trial Counsel submitted mitigation information and the

---

[26] *State v. Berry,* 2016 WL 5624893, at *4 (Del. Super. June 29, 2016) (citing Super. Ct Crim. R. 61(a)(1)). Rule 61(a)(1) states that Rule 61 "governs the procedure on an application by a person in custody under a sentence of this court seeking to set aside the judgment of conviction or a sentence of death on the ground that the court lacked jurisdiction or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction or a capital sentence." Neither of these two scenarios applies in the case at bar.
[27] *Id.* (citing *Pearlman v. State*, 970 A.2d 257 (Table), 2009 WL 766522, at *1 (Del. Mar. 25, 2009); *Wilson v. State*, 900 A.2d 102 (Table), 2006 WL 1291369, at *2 (Del. May 9, 2006)).

report of an expert to the State, and negotiated a plea of 13 years at level 5, which was ultimately reduced to 12 years at level 5, followed by 10 years at level 3. On September 14, 2021, Trial Counsel advised Movant of this plea offer. Movant had hoped for less level 5 time, but understood that Trial Counsel had reduced that from 13 to 12 years. Trial Counsel advised Movant that Trial Counsel did not expect the plea agreement to get any better given the facts of the case. According to Trial Counsel, Movant "kept vacillating, but in the end decided not to risk losing the plea [agreement] and instead decided to take it."[28] As stated above, the sentence I imposed was exactly the sentence that Movant and the State agreed to, so Movant received the benefit of his bargain.

With respect to coercion or threats, Trial Counsel categorically states under oath in his Affidavit that he never threatened or deceived Movant. He simply informed Movant that, were Movant to go to trial, under the statute and sentencing guidelines he faced the potential of life in prison. At no time did Trial Counsel threaten Movant that, if Movant should not accept the State's plea offer, he would in fact receive a sentence of life in prison.

In addition to Trial Counsel's sworn statements, it is noteworthy that the Plea Agreement and the Truth-in-Sentencing Form ("TIS Form") clearly set forth the

---

[28] Trial Counsel Affidavit, p. 2.

sentence agreed to pursuant to the plea agreement, and that sentencing was at my discretion. Movant acknowledged this by signing those forms. In addition, with the assistance of a Spanish interpreter, Movant checked "Yes" in response to the question "Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement?" and responded "No" to the question "Have you been promised anything that is not stated in your written plea agreement?" Likewise, Movant answered "No" when the TIS Form asked, "Has your lawyer, the State, or anyone threatened or forced you to enter this plea?" and he then affirmed that he was satisfied with his attorney's representation of him. When Movant was asked "Has anyone promised what your sentence will be?" he replied by checking "No." In response to the final two questions on the TIS Form, Movant affirmed that he had read and understood all the information on the form and that all the answers he had given were truthful.

In my plea colloquy with Movant, I asked a similar series of questions to make sure that Movant understood the terms of his plea agreement and the rights that he was giving up by entering into a guilty plea agreement. I would never have accepted Movant's guilty plea if he had given answers that were inconsistent with those on his written TIS Form.

Movant's "claim that he was coerced into accepting the guilty plea, because Trial Counsel allegedly misrepresented the length of his sentence and deprived him of his free will, effectively operates as a challenge to his guilty plea, which he waived when the guilty plea was accepted by the Court."[29] "A defendant is bound by his statements given during the plea colloquy, absent clear and convincing evidence that the defendant did not understand the plea agreement, that he was forced to accept the plea, or that he was not satisfied with trial counsel's representation."[30]

The Rule 61 Motion presents no evidence that would call into question Movant's representations to me that he understood the terms of his plea agreement and that he was freely and voluntarily deciding to plead guilty. Movant is, therefore, "bound by his statements made at the plea colloquy" and in his TIS Form, "and any claims he now makes as to defects, errors, misconduct and deficiencies that occurred prior to the entry of the plea must fail."[31]

In my view, Trial Counsel's professional conduct not deficient under the *Strickland* performance prong. Trial Counsel expended resources to collect and

---

[29] *State v. Berry.* 2016 WL 5624893 at *5 (Del. Super. June 29, 2016).
[30] *Id*. (citing *State v. Harden,* 1998 WL 735879 at *5 (Del. Super. Jan. 13, 1998), *affd,* 719 A.2d 947 (Del. 1998)).
[31] *Id*. at *6.

11

present mitigation information and an expert's report to the State and negotiated a Plea Agreement with the State to Movant's considerable benefit.

**Prejudice to Movant**

Having determined that the Strickland performance prong was not proved by Movant, I am not required to address the prejudice prong; i.e., whether in the absence of Trial Counsel's advice, Movant would have rejected a guilty plea and proceeded to a jury or bench trial. However, I will do so. The most recent case from this Court concerning the coercion of a guilty plea in the Rule 61 context is *State v. Brooks*.[32] In *Brooks*, after his suppression motion was denied, defendant pleaded guilty to one count of Possession of a Firearm by a Person Prohibited. Trial Counsel negotiated a plea agreement with the State for the minimum mandatory sentence of 10 years at level 5, with no habitual offender petition, thereby avoiding the possibility of life imprisonment. The Court engaged defendant in a lengthy and fulsome colloquy. Defendant's verbal answers during the colloquy answers were consistent with the written answers he had given on the TIS Form. The Court accepted the plea and sentenced defendant to 15 years at level 5, suspended after 10 years for decreasing levels of supervision. Defendant did not appeal, but subsequently filed a Rule 61 motion in which he claimed that his lawyer forced him

---

[32] 2022 WL 2229780 (Del. Super. June 21, 2022).

12

to plead guilty.  Defendant claimed ineffective assistance of counsel and his lawyer filed an affidavit denying defendant's allegation that he forced defendant to plead guilty.   The Court considered the case only under the prejudice prong of *Strickland*.[33]

**Burden of Proof**

In rejecting this claim and denying his Rule 61 Motion, the *Brooks* Court nicely summarized the defendant's burden of proof under Delaware law:

> To state a plea-based ineffective assistance claim, the defendant must demonstrate prejudice: "a reasonable probability that, but for counsel's errors, he would not have pled guilty, but would have insisted on going to trial." "A reasonable probability means a probability sufficient to undermine confidence in the outcome ...." "The likelihood of a different result must be substantial[,] not just conceivable." Bare allegations of prejudice will not suffice. Nor will allegations that do not "pertain[ ] to the validity of the plea[.]" Instead, the defendant "must make concrete allegations of actual prejudice and substantiate them[.]"
>
> Pleading guilty is one of the defendant's "autonomy interests." Because its "consequences ... are the defendant's alone," the decision to plead guilty is "too important to be made by anyone else." Autonomous choices, however, "may sometimes make the defendant worse off than if defense counsel had the final say[.]" Even so, a defendant "cannot shift responsibility to his trial counsel for decisions in which he played a major role." The Court "cannot disregard" the defendant's choices because his choices may, in turn, "substantially influence counsel's choices." What the defendant commands, he must also obey.

---

[33] Moreover, because the Rule 61 claim failed under the prejudice prong of *Strickland*, the Court did not consider the performance prong of *Strickland*. *Id.* at n. 67.

13

A guilty plea will be enforced if it was knowingly and voluntarily entered. The defendant bears the burden of establishing that "his plea was made either involuntarily or under misapprehension or mistake as to his legal rights." In shouldering that burden, two "formidable barrier[s]" stand in the defendant's path. First, the defendant will be bound by his plea colloquy statements, which are "presumed to be truthful." And second, "[i]n the absence of clear and convincing evidence to the contrary," the defendant will be bound by his answers in his Truth-in-Sentencing forms. In all this, there is a "near-presumption" of validity that operates "against granting" a post-sentence motion attacking a guilty plea. "[I]n acting as an incentive to think through a guilty plea before sentence is imposed," a near-presumption of validity "tends to separate meritorious second thoughts" from "sour grapes over a sentence once pronounced."[34]

In the instant case, as in the *Brooks* case, Movant claims that Trial Counsel coerced him into pleading guilty, which Movant now says he did not want to do. However, I will not "upset a plea solely because of *post hoc* assertions from a defendant" of his "expressed preferences[,]" but will "look to contemporaneous evidence" instead.[35] Contemporaneous evidence -- Movant's colloquy, the Plea Agreement and the TIS Form -- undermines his belated assertion that he did not want to plead guilty. Measured against the colloquy, the Plea Agreement and the TIS Form, Movant's "coercion" allegation fails. Movant's colloquy, the Plea Agreement and the TIS Form control in the absence of clear and convincing evidence to the

---

[34] 2022 WL 2229780 at * 6-7 (Del. Super. June 21, 2022) (citations and footnotes omitted).
[35] *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

contrary. On this thin record, Movant's conclusory allegation that he did not want to plead guilty is neither clear nor convincing.

There is no evidence in the record to suggest that Trial Counsel ever coerced Movant to plead guilty. Movant himself decided to enter a guilty plea, which decision he may now have come to regret. But he cannot now shift the risks of litigation to Trial Counsel when those risks were not Trial Counsel's risks in the first place.[36] To the extent Movant suffered any "prejudice" from pleading guilty, he brought it on himself.[37]

Movant faced a difficult choice: to plead guilty to a 12-year prison sentence or to go to trial and risk a sentence of up to life in prison. In this light, Movant may have felt pressure or "coercion" to plead guilty. But that pressure or "coercion" was not created or exerted by Trial Counsel, and so is not the kind of *improper* pressure that Rule 61 was designed to remedy. Indeed, Trial Counsel managed to persuade the State to accept 12 years of imprisonment at level 5 and saved Movant from the possibility of a prison sentence for life. Although 12 years is not ideal, Movant's "decision to plead guilty as a means to avoid additional prison time does not amount to 'coercion.' "[38]

---

[36] *Cabrera v. State*, 173 A.3d 1012, 1021 (Del. 2017); *Shockley v. State*, 565 A.2d 1373, 1376 (Del. 1989).
[37] 2022 WL 2229780 at *8 (Del. Super. June 21, 2022).
[38] *Edwards v. State*, 2007 WL 4374237, at *1 (Del. Dec. 17, 2008).

15

## CONCLUSION

Since it plainly appears to me from the record of prior proceedings in the case (including the colloquy, the Plea Agreement and the TIS Form), the Rule 61 Motion, and the Affidavit that Movant is not entitled to relief, I am not further expanding the record to include to a Response from the State and a Reply from Movant, and I will not hold an evidentiary hearing.[39] I am entering an order for its summary dismissal.[40]

Ground (1) of Movant Raul Marquin-Mendoza's Motion for Postconviction Relief is **DENIED.**

**IT IS SO ORDERED.**

_____
/s/Craig A. Karsnitz

cc:     Prothonotary
        Daniel Strumpf, Esquire

---

[39] Super. Ct. Crim. R. 61(g)(5).
[40] Super. Ct. Crim. R. 61(d)(5).

16